**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Ryan,<br><br>   Plaintiff,<br><br>v.<br><br>eXp Realty LLC,<br><br>   Defendant. | No. CV-20-00325-PHX-GMS<br><br>**ORDER** |

Pending before the Court is eXp Realty LLC's Motion for Summary Judgment. (Doc. 55). For the following reasons, the motion is denied.[1]

**BACKGROUND**

In January 2018, Ms. Ryan ("Plaintiff") accepted the position of Executive Director of Education at eXp Realty LLC ("Defendant"). One of Plaintiff's duties was to create a mentorship program "that would be valuable to new agents of the company and create revenue for the company." (Doc. 57 at 1.) The parties agreed in writing that Plaintiff's annual salary would be $95,000; however, Plaintiff contends that the parties orally agreed that Plaintiff would also be entitled to "50% of the revenue received by the company" from the mentorship program. (Doc. 57 at 2.) For summary judgment purposes, Defendant does not dispute that such an oral agreement existed. (Doc. 55 at 3 n.3.)

---

[1] Defendant's request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence, and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invrs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

In late 2018, Plaintiff took on additional responsibilities after the departure of another employee. She did not receive any extra compensation or portion of the program revenues for these additional duties during 2018. In January 2019, Mr. Sanford, Defendant's CEO, began reviewing all management compensation, (Doc. 58-1 at 47), and requested a meeting with Plaintiff to discuss a new salary plan. Plaintiff wanted to use the opportunity to discuss the promised mentorship program revenue and prepared a synopsis about the revenue for Mr. Sanford to review. Plaintiff also posted on a Trello[2] board between her and Mr. Sanford indicating that she wanted to talk about the program revenue.

During the meeting on January 11, 2019, Mr. Sanford refused to discuss the mentorship program revenue, told Plaintiff it was not "germane" to the discussion, (Doc. 58-1 at 108), and that it "wasn't going to happen." (Doc. 58-1 at 75.) However, Mr. Sanford did inform Plaintiff that she would be receiving a $60,000 bonus, a salary increase to $150,000 a year, and opportunities for future bonuses based on performance. It is undisputed that Plaintiff accepted this new compensation structure.

After the January 2019 meeting, Plaintiff moved the post on Trello from the column "Doing" to the column "Done." (Doc. 56-1 at 55.) Plaintiff also wrote to Mr. Sanford thanking him for "taking care of [her] compensation," "honoring the commitment," and lifting "[a] frustration level." (Doc. 56-1 at 64.) Plaintiff contends that these statements were made in appreciation of the company rewarding her for taking on additional responsibilities after the employee left in 2018, (Doc. 58-1 at 80); in contrast, Defendant asserts that these comments reference the resolution of Plaintiff's claim to the program revenue. (Doc. 55 at 7–8.)

Throughout the rest of 2019, Plaintiff continued to be paid pursuant to the new compensation structure. Plaintiff received three quarterly bonuses and thanked Mr. Sanford after she received each bonus. Defendant contends that Plaintiff never again raised the program compensation issue after the meeting with Mr. Sanford. Plaintiff, on the other

---

[2] Trello is a collaborative website in which projects are organized into "boards." These "boards" show what projects are being worked on, "who's working on what, and where something is in a process." *What Is Trello?*, Trello (Feb. 5, 2021), https://help.trello.com/article/708-what-is-trello.

hand, testified that she had ongoing discussions with Mr. Conord—Defendant's Co-president—about receiving her share of the revenue. Plaintiff also testified that Mr. Conord specifically told her she should not "give up hope" on receiving her share of the revenues. (Doc. 58-1 at 88.)

Plaintiff was terminated in December 2019 and filed this lawsuit two months later. She is seeking $655,098.50 in unpaid compensation under A.R.S. § 23-350 and state contract law. (Doc. 1 at 1.) Defendant argues that Plaintiff's claims are barred by five affirmative defenses: modification, waiver, accord and satisfaction, equitable estoppel, and laches. (Doc. 55 at 1.)

## DISCUSSION

### I.     Legal Standard

The purpose of summary judgment is "to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[ ] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Parties opposing summary judgment are required to "cit[e] to particular parts of materials in the record" establishing a genuine dispute or "show[ ] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). A district court has no independent duty "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

When the moving party has the burden of proof at trial, it must establish all of the essential elements of the claim or defense to show it is entitled to judgment as a matter of law. *Avirez, Ltd. v. Resol. Tr. Corp.*, 876 F. Supp. 1135, 1137–38 (C.D. Ca. 1995); *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, "the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Rockaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).

## II.  Analysis

For the reasons set forth below Plaintiff has created a genuine issue of material fact as to each affirmative defense. Therefore, summary judgment is denied.

### A. Modification

A valid contract must be performed according to its terms unless it is modified. *Demasse v. ITT Corp.*, 194 Ariz. 500, 509, 984 P.2d 1138, 1147 (1999). For a modification to discharge the original contract terms, the parties must mutually assent, and there must be consideration. *Id.* The party asserting a contract modification has the burden of showing that a modification was made. *Yeazell v. Copins*, 98 Ariz. 109, 116, 402 P.2d 541, 546 (1965).

An employer cannot unilaterally modify an existing employment contract. *Demasse*, 194 Ariz. at 506, 984 P.2d at 1144. Even if the employee receives actual notice of the proposed change—as Defendant asserts here—she must still affirmatively consent to the change for there to be acceptance. *Id.* at 508, 984 P.2d at 1146. Passive silence is not acceptance. *Id.* Therefore, "[t]he burden is on the employer to show that the employee assented with knowledge of the attempted modification and understanding of its impact on the underlying contract." *Id.*

A genuine issue of material fact exists as to whether Plaintiff agreed to give up her claim to the program revenue. Defendant presents evidence that Plaintiff's conduct following the January 2019 meeting establishes such an agreement: Plaintiff accepted the new compensation structure, she continually reiterated her satisfaction with the new compensation structure, and she moved the Trello board post detailing the program revenue

issue to "done." (Doc. 55 at 7–8.) Plaintiff also specifically referenced Defendant's honoring a "commitment" in her thank-you note to Mr. Sanford following the meeting (Doc. 56-1 at 64.)

On the other hand, it is undisputed that Mr. Sandford refused to discuss the promised revenue in the January 2019 meeting, (Doc. 58-1 at 108); (Doc. 57 at 10), and Plaintiff testified that he never proposed a resolution to that issue. (Doc. 58-1 at 76–77.) Plaintiff also testified that the "commitment" she referenced in her note was her taking on extra duties after another employee's departure in late 2018, (Doc. 58-1 at 80), and that her moving the Trello post to "done" was merely tabling it for later, which she had done with that same post in late 2018—before any meeting with Mr. Sanford. (Doc. 58-1 at 69–70, 121.)

A reasonable jury could credit Plaintiff's testimony explaining her post-January conduct, and Defendant has no other evidence that Plaintiff assented with the "knowledge . . . and understanding" that her acceptance of the new compensation structure was contingent on her giving up the program revenue. *Demasse*, 194 Ariz. at 508, 984 P.2d at 1146. Because a genuine issue of material fact exists as to whether Plaintiff agreed to the contract modification, summary judgment is denied.[3]

Plaintiff's acceptance of what she alleges as deficient performance does not establish a modification.[4] (Doc. 55 at 8–9.) Defendant cites *Schade v. Dietrich*, 158 Ariz. 1, 10, 760 P.2d 1050, 1059 (1988), for the proposition that when "one party has begun

---

[3] For the same reason, summary judgment based on an accord and satisfaction is denied. "An 'accord and satisfaction discharges a contractual obligation or cause of action when the parties agree to exchange something of value in resolution of a claim or demand and then perform on that agreement . . . .'" *Abbott v. Banner Health Network*, 239 Ariz. 409, 413, 372 P.3d 933, 937 (2016) (quoting *Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 510, 269 P.3d 678, 686 (Ct. App. 2011). However, like contract modification, both parties must mutually agree to discharge the existing obligation. *Id.* Therefore, because a genuine issue of material fact exists as to whether Plaintiff agreed to give up her claim to the program revenue in exchange for the new compensation structure, summary judgment must also be denied on this issue.

[4] Defendant's first cited case refers to contract interpretation, not modification, and is thus inapplicable. *Abrams v. Horizon Corp.*, 137 Ariz. 73, 79, 669 P.2d 51, 57 (1983) (stating that the continual acceptance of deficient performance "is given great weight in the *interpretation* of the agreement" (emphasis added)).

performance 'with the knowledge and approval of the other,'" it is "nearly always evidence that they regard the contract as consummated and intend to be bound thereby." (Doc. 55 at 9 (quoting *Schade*, 158 Ariz. at 10, 760 P.2d at 1059)). The issue here, however, is not whether a contract was consummated but whether Plaintiff's original employment contract was modified—whether Plaintiff agreed to discharge Defendant's existing obligation under a contract already consummated. As *Demasse* makes clear, "the employee does not manifest consent to an offer modifying an existing contract without taking affirmative steps, beyond continued performance, to accept." *Demasse*, 194 Ariz. at 507, 984 P.2d at 1145. Although Defendant has provided evidence that Plaintiff did take such affirmative steps, Plaintiff's testimony creates a genuine issue of material fact as to whether these steps actually "manifest[ed] consent to an offer [to] modify[] an existing contract." *Id.* For that reason, summary judgment is denied on this issue.

### B. Waiver

#### 1. Genuine Issue of Material Fact

"Waiver is either the express, voluntary, intentional relinquishment of a known right or such conduct as warrants an inference of such an intentional relinquishment." *Am. Cont'l Life Ins. Co. v. Ranier Constr. Co.*, 125 Ariz. 53, 55, 607 P.2d 372, 374 (1980). "Waiver by conduct must be established by evidence of acts inconsistent with an intent to assert the right." *Id.* "A clear showing of intent to waive is required for waiver of rights." *Minjares v. State*, 223 Ariz. 54, 58, 219 P.3d 264, 268 (Ct. App. 2009).[5]

Defendant asserts the same facts to establish waiver as it does for contract modification, arguing that Plaintiff's acts were not consistent with an intent to assert the right to receive the program revenue. (Doc. 55 at 7–10.) However, viewing the facts in the light most favorable to Plaintiff, Plaintiff's testimony explaining her conduct and

---

[5] Plaintiff states that the burden of proof for waiver is "clear and convincing evidence." (Doc. 57 at 10.) Although this is the correct standard for "a waiver of child support arrearages," *Ray v. Magnum*, 163 Ariz. 329, 332, 788 P.2d 62, 65 (1989), this Court could find no case in which this heightened standard applied outside the family law context. *See Coburn v. Rhodig*, 243 Ariz. 24, 26, 400 P.3d 448, 451 (Ct. App. 2017); *In re Marriage of Richardson v. Richardson*, No. 1 CA–CV 16–0215 FC, 2017 WL 586423, at *9 (Ariz. Ct. App. Feb. 14, 2017). The Court, therefore, declines to adopt it here.

acceptance of the new compensation structure makes Defendant's "showing of intent to waive" far from "clear." *Minjares*, 223 Ariz. at 58, 219 P.3d at 268. As described above, Plaintiff's explanation of her post-January conduct could be credited by a jury. Moreover, although Defendant emphasizes that Plaintiff never raised the program revenue issue with Mr. Sanford again before her termination, Plaintiff alleges that she "had ongoing discussions with the co-president Dave Conord" about the revenue, and Mr. Concord assured Plaintiff not to "give up hope" on receiving the revenue. (Doc. 57 at 10); (Doc. 58-1 at 88.) If a jury accepts that these conversations occurred, Plaintiff's conduct could not be deemed "inconsistent with an intent to assert the right"—it would be entirely consistent with an intent to do so. *Am. Cont'l Life Ins. Co.*, 125 Ariz. at 55, 607 P.2d at 374. Therefore, although Plaintiff's conduct is evidence of waiver, Plaintiff's testimony creates a genuine issue of material fact such that a reasonable jury could find in her favor.[6] Summary judgment is denied.

### 2. Plaintiff's Self-Serving Testimony

Plaintiff's self-serving testimony is sufficient to establish a genuine issue of material fact. (Doc. 59 at 6.) "[T]he district court may not disregard a piece of evidence at the summary judgment stage solely based on its self-serving nature." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015) (holding that the plaintiff's "uncorroborated and self-serving" testimony was sufficient to create a genuine issue of material fact). Instead, a district court may discount self-serving testimony if it "states only conclusions and not facts that would be admissible in evidence." *Id.* Plaintiff's self-serving testimony is thus sufficient unless it is too conclusory to establish a genuine issue of fact.

Here, Plaintiff's testimony is specific enough to survive summary judgment. (Doc. 59 at 6.) Plaintiff testified that sometime in early 2019, she and Mr. Conord started reviewing alternative pay structures to attract new talent. (Doc. 58-1 at 88.) During those discussions, her own claim to the program revenue came up, and Mr. Conord told her to

---

[6] Because equitable estoppel requires a showing of "acts inconsistent with" a later-adopted position, *Valencia Energy Co. v. Ariz. Dep't of Rev.*, 191 Ariz. 565, 576–77, 959 P.2d 1256, 1267–68 (1998), a genuine issue of material fact also exists as to equitable estoppel for the same reasons. Summary judgment is thus denied on this issue.

- 7 -

"hold on" and not "give up hope" on receiving the revenue. (Doc. 58-1 at 88–89.) Although Plaintiff does not provide a specific date for these conversations, she does testify as to their context and content. These facts are specific enough to create a jury issue: a jury could reasonably find that during the course of an ongoing project focused on how to structure compensation to attract talent to the company, Plaintiff discussed her own dissatisfaction with Defendant's refusal to pay her the program revenue. Because "a court ruling on a motion for summary judgment may not engage in '[c]redibility determinations' or 'the weighing of evidence,'" a jury must decide whether Plaintiff's conduct, when considered in light of her testimony, constituted a waiver. *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (quoting *Anderson*, 477 U.S. at 255). Accordingly, summary judgment is denied.

### C. Laches

"'Laches will generally bar a claim when the delay is unreasonable and results in prejudice to the opposing party' even where the applicable statute of limitations has not yet expired." *Manicom v. CitiMortgage, Inc.*, 236 Ariz. 153, 161, 336 P.3d 1274, 1282 (Ct. App. 2014) (quoting *In re Indenture of Trust Dated January 13, 1964,* 235 Ariz. 40, 48, 326 P.3d 307, 315 (Ct. App. 2014)). In determining whether the delay was unreasonable, courts consider "the justification for delay, including the extent of plaintiff's advance knowledge of the basis for challenge." *League of Ariz. Cities & Towns v. Martin*, 219 Ariz. 556, 558, 201 P.3d 517, 519 (2009). "When there is delay either due to the conduct of other parties or to bona fide attempts to avoid litigation, the defense of laches will not exist." *Tovrea v. Umphress*, 27 Ariz. App. 513, 521, 556 P.2d 814, 822 (1976). Because the Court finds that there is a genuine issue of material fact as to whether Plaintiff's delay was unreasonable, it need not consider whether Defendant was prejudiced.

Plaintiff's delay in filing this lawsuit does not bar her claim. (Doc. 55 at 13.) Defendant informed Plaintiff that it would not pay her the program revenue in January 2019, and Defendant failed to make the first scheduled payment on February 15, 2019. (Doc. 55 at 13.) Plaintiff filed her complaint on February 12, 2020—over a year after she

received notice that Defendant would not pay her the promised revenue. However, mere delay is insufficient to establish laches; the delay must also be unreasonable. *See McLaughlin v. Bennett*, 225 Ariz. 351, 353, 238 P.3d 619, 621 (2010). Although Plaintiff accepted the new compensation structure and did not speak to Mr. Sanford during this time period, she did testify that she continued to believe she would be paid the program revenue based on her ongoing conversations with Mr. Conord.[7] (Doc. 58-1 at 88.) She filed this lawsuit only two months after her termination—when those conversations inevitably ceased. (Doc. 57 at 15.) A reasonable jury could credit Plaintiff's testimony and find that based on Mr. Conord's representations that her compensation was being discussed among Defendant's leadership, she did not act unreasonably by refraining from filing a lawsuit when she believed the issue could still be resolved through non-judicial means. Therefore, summary judgment is denied on this issue.

## CONCLUSION

As explained above, a genuine dispute of material fact exists as to all of Defendant's claimed defenses. Accordingly, its motion for summary judgment is denied.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 55) is **DENIED**.

Dated this 7th day of September, 2021.

_____
G. Murray Snow
Chief United States District Judge

---

[7] Although Defendant argues that Mr. Sanford—not Mr. Conord—had the authority to pay Plaintiff the program revenue, this fact alone is not enough to prevail at the summary judgment stage. (Doc. 59 at 3.) Plaintiff testified that Mr. Conord "was in [the] leadership group" and told her not to "give up hope" on the program revenue because the "leadership group . . . knew about it." (Doc. 58-1 at 88.) Even if Mr. Conord did not have the final authority to issue the revenue payments, a reasonable jury could find that the alleged references to the "leadership group" indicates that those with authority continued to discuss the issue, causing Plaintiff to rely on those statements.